IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| G&G Closed Circuit Events LLC, | ) C/A No.: 3:12-2933-JFA-SVH |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Camden Wing Shack LLC d/b/a The Wing Shack, Crystal Lee Bryson a/k/a Crystal L. Bryson a/k/a Crystal Lee Trimnal, | ) REPORT AND RECOMMENDATION |
| | ) |
| Defendants. | ) |

Plaintiff G&G Closed Circuit Events LLC ("G&G"), which had exclusive, nationwide commercial television distribution rights to *Strikeforce: Fedor Emelianenko v. Dan Henderson* ("the Program"), sued defendant Camden Wing Shack LLC d/b/a The Wing Shack ("Wing Shack"), and its principal, Crystal Lee Bryson a/k/a Crystal L. Bryson a/k/a Crystal Lee Trimnal ("Bryson") (collectively "Defendants") for exhibiting the July 30, 2011, commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to G&G. [Entry #1 at ¶¶ 13–16]. G&G's complaint included causes of action brought pursuant to 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state law claim for conversion. [Entry #1 at ¶¶ 12–35]. Although Defendants were served with G&G's complaint, they did not timely answer or file another responsive pleading. Pursuant to G&G's request, the Clerk

1

of Court entered default against Defendants on December 4, 2012. [Entry #7]. Thereafter, Bryson filed a letter docketed as an answer on December 27, 2012. [Entry #9]. On January 15, 2013, the undersigned ordered Wing Shack to obtain counsel and make an appearance in this court by February 19, 2013. [Entry #21]. Wing Shack failed to comply with the order. G&G then moved for a default judgment and award of attorneys' fees and other costs. [Entry #23]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). Because the motion for default judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court enter default judgment against Wing Shack in the amount of $8,028.75.

I.    Introduction

G&G filed this action against Defendants on October 10, 2012, seeking an award of statutory damages, enhanced damages, attorneys' fees, and costs based on their unlicensed broadcast of the Program. [Entry #1 at ¶¶ 12–35 and Prayer for Relief].

  A.    Jurisdiction and Venue

The court has subject matter jurisdiction over G&G's claims pursuant to 28 U.S.C. §§ 1331 and 1367. *See id.* at ¶¶ 1–2, 32–35. The court has personal jurisdiction over Defendants, and venue in this district is proper pursuant to 28 U.S.C. § 1391 because Bryson is a South Carolina resident, Wing Shack conducts business in this district, and because the event giving rise to the claim occurred in this district. *Id.* at ¶¶ 3–4, 6–8.

B.     Process and Service

On October 26, 2012, G&G's private process server served Wing Shack by personally serving the husband of Wing Shack's registered agent, Bryson, at her home at 1777C Cassatt Road, Cassatt, South Carolina. [Entry #5-1]. Bryson's husband confirmed that she lived at the residence and that she was in the shower when process service was delivered. *Id.*; *see also* Fed. R. Civ. P. 4(e)(2)(b). Also on December 11, 2010, G&G's process server served Bryson by way of substituted service upon her husband at her home at 1777C Cassatt Road, Cassatt, South Carolina. [Entry #5-2].

C.     Grounds for Entry of Default

Defendants did not timely file an answer or other pleading. On December 4, 2012, G&G filed its request for entry of default as to Wing Shack and Bryson, which it served on both Wing Shack and Bryson by mail. [Entry #6, #6-3]. The Clerk of Court properly entered default as to Wing Shack and Bryson on December 4, 2012, pursuant to Fed. R. Civ. P. 55(a). [Entry #7].

On December 27, 2012, Bryson filed a letter denying liability. [Entry #9]. The court liberally construed Bryson's letter as a motion to file her answer out of time and docketed her letter as a pro se answer to the complaint. *Id.*

On March 5, 2013, G&G filed a motion for default judgment as to both Defendants, which it served on them by mail. [Entry #23, #23-8]. Because Bryson has appeared in the case, the undersigned does not recommend entering default judgment against her. Wing Shack, however, has not appeared and failed to comply with the

3

court's January 15, 2013, order directing it to make an appearance by February 19, 2013. [Entry #21]. Consequently, the remainder of this Report applies only to Wing Shack.[1]

II.     Findings of Fact

Having reviewed G&G's complaint, request for entry of default, motion for default judgment, as well as all supporting and supplemental information provided, the undersigned accepts G&G's well-pleaded factual allegations as true as to Wing Shack and makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting "'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

G&G is a California limited liability company with its principal place of business in California. [Entry #1 ¶ 5]. Camden Wing Shack LLC is a South Carolina LLC that does business as Wing Shack at 129 East DeKalb, Camden, South Carolina 29020. *Id.* at ¶ 6.    Relevant to this litigation, G&G paid for, and was granted, the exclusive, nationwide commercial television distribution rights to the Program. *Id.* at ¶ 13. G&G contracted with and granted various persons and entities the rights to publicly exhibit the Program to their customers within their commercial establishments. *Id.* at ¶ 14. G&G

---

[1] The undersigned will enter a scheduling order governing the claims against Bryson.

expended substantial money in marketing, advertising, administering, and transmitting the Program to the aforementioned persons and entities. *Id.* at ¶ 15.

III.     Analysis

Having found the facts as set forth in G&G's complaint deemed admitted by Wing Shack by default, the court must ensure the complaint sets forth claims under the 47 U.S.C. § 605 before entering default judgment. *See generally GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating plaintiff's claims prior to entry of default judgment in copyright action). The court considers whether G&G has set forth claims for which relief can be granted pursuant to the standard of Fed. R. Civ. P. 12(b)(6).

A.     Election of Remedies

In its motion for default judgment, G&G submits that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553. Because the two statutory schemes provide relief for the alternate means by which the Program might have been received—satellite or cable—G&G elected to proceed under 47 U.S.C. § 605, and thereby waived any right to recover under 47 U.S.C. § 553. [Entry #23-1 at 3]. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.*, C/A No. 3:10-199-CMC, 2010 WL 3420189, *2 & n.2 (D.S.C. Aug. 23, 2010) (acknowledging propriety of plaintiff's electing between the two statutory schemes based on mode of transmission of programming).

5

In electing to pursue damages pursuant to 47 U.S.C. § 605, G&G concedes the split in authority as to the applicability of this section to pirated programming involving cable services—as opposed to satellite services—at the delivery point. [Entry #23-1 at 4]. The Fourth Circuit has not addressed this specific issue and courts in this district have adopted the Seventh Circuit's position in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996), finding that 47 U.S.C. § 553, not 47 U.S.C. § 605, applied to the theft of cable services at the point of delivery. *Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996); *see also J & J Sports Prods., Inc. v. Chef Tejano, LLC*, C/A No. 0:11-2436-MBS, 2013 WL 353497, at *2 (D.S.C. Jan. 29, 2013). G&G submits that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether the Program was broadcast by cable or satellite signal. [Entry #23-1 at 4]. A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 and a $100,000 maximum enhancement for willfulness; statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations and a maximum $50,000 enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii), 553(c)(3)(B).

The court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable. G&G has elected to pursue damages under 47 U.S.C. § 605. In any event, in light of the recommended damages, the distinction is without a difference in this case. *Cf. Columbia Cable*, 954 F. Supp. at 128 (noting that, even if 47 U.S.C. § 605 were

applicable to cable theft, under facts of case, court would award damages "as close as permissible to the amount awarded under § 553").

      B.      Liability under 47 U.S.C. § 605

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. *See* 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof [] to [] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). In short, G&G must demonstrate that Wing Shack intercepted the Program's signals and "divulged," or aired it to commercial patrons.

G&G submitted proof through the affidavit of a private investigator ("Investigator Affidavit") who viewed the Program at Wing Shack. [Entry #23-4 at 2–4]. The Investigator Affidavit provides evidence that the Program was displayed on four televisions at Wing Shack and provides details of the portion of the Program he saw. *Id.* at 2–3 (noting names and attire of fight participants, who was interviewed during the fight, a description of the server, the number of televisions, and other distinguishing features of the establishment). G&G having established that Wing Shack violated 47 U.S.C. § 605(a), the undersigned recommends that judgment be entered in G&G's favor as to its claim thereunder.

C.     Damages under 47 U.S.C. § 605

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private civil action, as follows:

> (B) The court–
>
>> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>> (ii) may award damages as described in subparagraph (C); and
>> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). G&G seeks damages, attorneys' fees, and costs.

1.     Statutory Damages under 47 U.S.C. § 605

The statute sets out the following available damages:

> (C)(i)   Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
>> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>>
>> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C).

G&G elects to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). As G&G points out, statutory damages are appropriate when actual damages are difficult to prove. [Entry #23-1 at 5]. G&G seeks $10,000 in statutory damages. *Id.* at 8.

Wing Shack has the capacity for approximately 50 people. [Entry #23-4 at 3]. The investigator counted the number of patrons three times and found there were 12 patrons during each count. *Id.* G&G provided evidence that the licensing fee for Wing Shack to have legally shown the Program would have been $1,200. [Entry #23-3 at 9].

The court may award statutory damages between $1,000 to $10,000, in an amount "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff.

9

Other courts award a flat amount for a violation. *See Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd.*, 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect"); *G&G Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc.*, 2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages). The Fourth Circuit has not addressed any of these methods.

Because it would have cost $1,200 for Wing Shack to purchase the right to exhibit the Program, the undersigned recommends a statutory damages award of $1,200. The undersigned finds that an award of $1,200 fairly approximates the actual harm to G&G resulting from Wing Shack's unauthorized exhibition of the Program. *See Joe Hand Promotions, Inc. v. King*, C/A No. 4:12-245-RBH, 2012 WL 5238285, at *3 (D.S.C. Oct. 23, 2012).

2. Enhancement of Statutory Damages under 47 U.S.C. § 605.

G&G claims that Wing Shack willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $100,000. [Entry #1 at ¶¶ 16–17; Entry #23-1 at 11]. The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]"  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition to G&G's pleadings regarding Wing Shack's intentional

10

acts, it presented evidence that the Program could not have been "mistakenly, innocently or accidentally intercepted." [Entry #23-3 at ¶ 9].

The undersigned is in agreement with other courts that have considered this issue "that a firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately." *J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Bar & Grille*, C/A No. 2:09-3141-DCN-RSC, 2010 WL 1838432, *2 (D.S.C. April 5, 2010). Consequently, the undersigned finds that an enhanced award is necessary to deter the wilful piracy of Plaintiff's programs. In this case, Wing Shack unlawfully exhibited the Program on four televisions to at least 12 customers. It is not hard to believe that this type of piracy could provide Wing Shack with an unfair competitive advantage and harm Plaintiff by making it less likely that Wing Shack's competitors will purchase its programs. The court finds that enhanced damages in the amount of four times the basic statutory damages, or $4,400.00, provides just and adequate deterrence for such willful violations. Accordingly, the court recommends awarding total damages in the amount of $5,600.00.

IV.    Attorneys' Fees and Costs under 47 U.S.C. § 605

The Communications Act requires that the court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As rightful owner of the Program broadcast rights, G&G is an aggrieved party that has prevailed.

11

A.     Request for Costs

G&G submitted declarations from its South Carolina counsel, Leonard R. Jordan, Jr. ("Jordan"); and its California counsel, Thomas P. Riley ("Riley"), in support of its request to recover costs. [Entry #23-6; Entry #23-7]. G&G seeks recovery of the statutory filing fee, service-of-process fees, investigative costs, and miscellaneous costs. [Entry #23-6 at ¶ 5; Entry #23-7 at ¶ 11].

The undersigned is not aware of cases in the Fourth Circuit or courts in this district that have discussed what "full costs" are to be awarded a prevailing party pursuant to 47 U.S.C. § 605(e). In *Kingsvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59 (E.D.N.Y. 2006), the court considered the legislative history and determined that "full costs" included more than those costs taxable under 28 U.S.C. § 1920, the general statute setting out limited taxable costs. *See id.* at 65–67.

Based on the legislative history and the statute's mandatory award of "full costs," the undersigned finds it appropriate to award the type of costs requested, so long as these costs are adequately explained and supported. Award of the $350 statutory filing fee is appropriate in this matter. Additionally, G&G's South Carolina counsel sets forth the cost of service of the summons and complaint on Defendants as totaling $100 and has attached the invoice for the same. [Entry #23-6 at 4]. G&G has provided sufficient documentation and explanation of these requested costs and the undersigned recommends they be awarded.

On this record, the undersigned cannot recommend awarding the $575 G&G seeks in investigative costs. The *Autar* court specifically found investigative costs could be recovered under 47 U.S.C. § 605(e). 426 F. Supp. 2d at 67 (noting Senate Committee's intent that full costs include "reasonable investigative fees (related to the action brought) of an aggrieved party") (internal quotation and citation omitted)). However, that court also found it was not required to award such fees and that an award requires the prevailing party to appropriately show that the fees sought were reasonable (i.e., the investigator's billing rate, time, and qualifications). *Id.* Plaintiff having failed to so document the investigator fees, the *Autar* court denied the same. *Id.* at 67–68.

In this case, G&G has provided no detail regarding the $575 in investigative fees sought. The undersigned concurs with the *Autar* court that fees for necessary investigative services may be awarded, but that the fees must be supported with specific information about the time the investigator spent on the matter, his hourly rate, and his qualifications to charge such fees. Without this supporting information, the undersigned is constrained to recommend denial of this portion of G&G's request for costs. Should G&G provide sufficient detail in any objections to this Report, the district court may choose to consider that detail and make its independent determination regarding whether investigative costs should be included in any default judgment.

G&G has also failed to provide documentation regarding the requested $32.41 it seeks for miscellaneous costs. Additionally, G&G has failed to explain the necessity of

these costs. Therefore, the undersigned recommends the district judge decline to award such costs in the absence of further explanation or documentation.

In sum, the undersigned recommends $450 be awarded in costs as follows: $350 filing fee and $100 for service of process.[2]

B.     Request for Attorneys' Fees

The "full costs" to be awarded to a prevailing party pursuant to 47 U.S.C. § 605(e) includes "reasonable attorneys' fees." In support of its request for attorneys' fees, G&G submits a declaration from Jordan including $1,330 in legal fees and a declaration from Riley including $648.75 in legal fees. Accordingly, G&G seeks a total of $1,978.75 in legal fees.

In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the

---

[2] Although these costs applied to both Wing Shack and Bryson, Plaintiff would have incurred the same costs even if Wing Shack had been the only defendant. Thus, the undersigned concludes that it is appropriate to award them against Wing Shack. The same is true of Plaintiff's attorneys' fees.

undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *Jackson v. Estelle's Place, LLC*, No. 09-1700, 2010 WL 3190697, *4 (4th Cir. Aug. 12, 2010). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this court's Local Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Rule 54.02(A) (D.S.C.).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, supports the $1,978.75 in fees submitted on behalf of G&G. Based on the information and supporting documents before the court at this time, the undersigned recommends that judgment against Wing Shack include an award of costs and attorneys' fees in the amount of $2428.75 ($450 costs plus $1,978.75 attorneys' fees).

V.    Recommendation

The undersigned recommends default judgment be entered against Wing Shack and that it be found liable for willful violation of 47 U.S.C. § 605. As a result of such violation, G&G should be awarded judgment against Wing Shack, which should include the award of $450 in costs and $1,978.75 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and $5,600 in statutory and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C). Thus, the total recommended monetary award is $8,028.75 ($5,600 damages, plus $2,428.75 in costs and fees), barring supplementation by counsel.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 4, 2013                                                                       Shiva V. Hodges
Columbia, South Carolina                                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).