IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| G&G Closed Circuit Events LLC, | ) | C/A No.: 3:12-2933-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Camden Wing Shack LLC d/b/a The Wing Shack, Crystal Lee Bryson a/k/a Crystal L. Bryson a/k/a Crystal Lee Trimnal, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion for summary judgment filed by Plaintiff G&G Closed Circuit Events LLC ("G&G") against Crystal Lee Bryson a/k/a Crystal L. Bryson a/k/a Crystal Lee Trimnal ("Bryson"). [Entry #30]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration.

For the reasons that follow, the undersigned recommends the district court enter judgment against Bryson in the amount of $8,428.75.

I.   Factual and Procedural Background

G&G had exclusive, nationwide commercial television distribution rights to *Strikeforce: Fedor Emelianenko v. Dan Henderson* ("the Program"), and it sued

1

defendant Camden Wing Shack LLC d/b/a The Wing Shack ("Wing Shack"), and its principal, Bryson (collectively "Defendants") for exhibiting the July 30, 2011, commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to G&G. [Entry #1 at ¶¶ 13–16]. G&G's complaint included causes of action brought pursuant to 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state law claim for conversion. [Entry #1 at ¶¶ 12–35]. Although Defendants were served with G&G's complaint, they did not timely answer or file another responsive pleading. Pursuant to G&G's request, the Clerk of Court entered default against Defendants on December 4, 2012. [Entry #7]. Thereafter, Bryson filed a letter docketed as an answer on December 27, 2012. [Entry #9].

On July 1, 2013, the court granted G&G's motion for a default judgment against Wing Shack in the amount of $8,428.75 ($6,000 damages, plus $2,428.75 in costs and fees). [Entry #29]. On July 2, 2013, G&G filed the instant motion for summary judgment against Bryson. [Entry #30]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on July 2, 2013, the court advised Bryson of the summary judgment procedures and the possible consequences if she failed to respond adequately to Respondent's motion by August 5, 2013. [Entry #31]. After Bryson failed to respond to the motion for summary judgment, the undersigned issued another order on August 8, 2013, directing her to advise the court by August 21, 2013, whether she opposed Plaintiff's motion for

2

summary judgment and to identify the legal grounds for her opposition. [Entry #33]. Bryson has failed to file any opposition to the motion for summary judgment. Therefore, it appears that she does not oppose it. Independently, having considered the motion for summary judgment and the record in this case, the undersigned recommends that the motion be granted on the merits.

II.     Discussion

    A.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

B.   Analysis

On April 9, 2013, counsel for G&G sent discovery requests to Bryson, including First Requests for Admission ("Admissions"). [Entry #30-1 at ¶ 2]. In his affidavit attached to the summary judgment motion, G&G's counsel has asserted that he received no response to the Admissions from Bryson. *Id.* at ¶ 4. Because Bryson has failed to object to or timely deny the requests contained in G&G's Admissions, Bryson has effectively admitted all such requests, pursuant Fed. R. Civ. P. 36.

G&G is a California limited liability company with its principal place of business in California. [Entry #1 at ¶ 5]. G&G paid for, and was granted, the exclusive, nationwide commercial television distribution rights to the Program. *Id.* at ¶ 13. Bryson did not order the Program for Wing Shack from G&G or from any person authorized by G&G. [Admissions 1, 2]. Bryson nor anyone else paid a licensing fee to G&G or any person authorized by G&G for Wing Shack's exhibition of the Program. [Admission 3]. Bryson personally intercepted and broadcast and supervised Wing Shack's interception and broadcast of the Program. [Admissions 4, 5]. In advance of the Program, Bryson, personally or through agents, advertised that Wing Shack would telecast the Program. [Admission 6]. Bryson was aware that a licensing fee was required to be paid to G&G for Wing Shack to lawfully telecast the Program. [Admission 8]. Bryson is aware that Wing Shack customers watched the Program broadcast there on July 30, 2011. [Admission 9].

4

During the three years prior to July 30, 2011, Wing Shack has broadcast professional boxing matches. [Admission 10]. Wing Shack received the Program because a residential cable television service was diverted to it using an unlawful decoder or descrambler, without proper authorization. [Admissions 11, 12]. Bryson or her agents used a satellite access card programmed to enable it to receive the Program through satellite television service without proper authorization or payment and through some means to intercept or receive it from others rather than paying G&G a fee for the right to receive the Program. [Admission 13, 15]. Bryson or her agents ordered the Program from a programming provider (e.g., cable company, Dish Network, Direct TV) and paid the provider the residential license fee. [Admissions 14, 15, 16, 17]. Bryson is the manager of Wing Shack and an officer or shareholder of Camden Wing Shack LLC d/b/a The Wing Shack. [Admissions 18, 19]. Bryson was present inside Wing Shack on the day of and during the Program. [Admissions 20, 21]. Bartenders, waitresses and/or the manager act as agents or subordinates for and on behalf of Bryson. [Admission 22]. The television monitors within Wing Shack exist for the viewing pleasure of its patrons. [Admission 23]. Bryson willfully and intentionally advertised and broadcast the Program at Wing Shack for her direct or indirect financial gain and imposed a cover charge for customers on the night that Wing Shack broadcast the Program. [Admissions 25, 26, 27, 28, 29]. By broadcasting the Program, Bryson willfully injured G&G. [Admission 30]. Bryson, personally or through agents, obtained the telecast of the Program by illegal means, knowing Wing Shack was not authorized to broadcast or exhibit it. [Admissions

31, 32]. Bryson knew that Wing Shack did not obtain a commercial license to broadcast or exhibit the Program and intended to broadcast it while avoiding payment of the commercial licensing fee. [Admissions 33, 34]. Bryson, personally or through agents, intentionally obtained and broadcast the Program by deception. [Admissions 35, 36]. G&G's net worth (fair market of assets less fair market value of liabilities) exceeds $1,000,000. [Admission 37]. Bryson owes G&G its reasonable attorney's fees for the prosecution of this lawsuit. [Admission 38].

In its motion, G&G submits that it has established liability pursuant to 47 U.S.C. § 605(e)(3). Because the two statutory schemes provide relief for the alternate means by which the Program might have been received—satellite or cable—G&G elected to proceed under 47 U.S.C. § 605, and thereby waived any right to recover under 47 U.S.C. § 553. [Entry #23-1 at 3]. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.*, C/A No. 3:10-199-CMC, 2010 WL 3420189, *2 & n.2 (D.S.C. Aug. 23, 2010) (acknowledging propriety of plaintiff's electing between the two statutory schemes based on mode of transmission of programming).

In electing to pursue damages pursuant to 47 U.S.C. § 605, G&G concedes the split in authority as to the applicability of this section to pirated programming involving cable services—as opposed to satellite services—at the delivery point. [Entry #23-1 at 4]. The Fourth Circuit has not addressed this specific issue and courts in this district have adopted the Seventh Circuit's position in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996), finding that 47 U.S.C. § 553, not 47 U.S.C. § 605, applied to the theft of cable

6

services at the point of delivery. *Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996); *see also J & J Sports Prods., Inc. v. Chef Tejano, LLC*, C/A No. 0:11-2436-MBS, 2013 WL 353497, at *2 (D.S.C. Jan. 29, 2013). G&G submits that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether the Program was broadcast by cable or satellite signal. [Entry #23-1 at 4]. A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 and a $100,000 maximum enhancement for willfulness; statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations and a maximum $50,000 enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii), 553(c)(3)(B).

The court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable. G&G has elected to pursue damages under 47 U.S.C. § 605. In any event, in light of the recommended damages, the distinction is without a difference in this case. *Cf. Columbia Cable*, 954 F. Supp. at 128 (noting that, even if 47 U.S.C. § 605 were applicable to cable theft, under facts of case, court would award damages "as close as permissible to the amount awarded under § 553").

<u>Liability under 47 U.S.C. § 605</u>

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. *See* 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

7

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof [] to [] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). In short, G&G must demonstrate that Bryson intercepted the Program's signals and "divulged," or aired it to commercial patrons.

G&G submitted proof through the affidavit of a private investigator ("Investigator Affidavit") who viewed the Program at Wing Shack. [Entry #23-4 at 2–4]. The Investigator Affidavit provides evidence that the Program was displayed on four televisions at Wing Shack and provides details of the portion of the Program he saw. *Id.* at 2–3 (noting names and attire of fight participants, who was interviewed during the fight, a description of the server, the number of televisions, and other distinguishing features of the establishment). G&G having established that Bryson violated 47 U.S.C. § 605(a), the undersigned recommends that judgment be entered in G&G's favor as to its claim thereunder.

<u>Damages under 47 U.S.C. § 605</u>

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private civil action, as follows:

> (B) The court–
>
>> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>> (ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). G&G seeks damages, attorneys' fees, and costs.

1. Statutory Damages under 47 U.S.C. § 605

The statute sets out the following available damages:

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C).

G&G elects to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. §

605(e)(3)(C)(i)(I). As G&G points out, statutory damages are appropriate when actual damages are difficult to prove. [Entry #23-1 at 5]. G&G seeks the same judgment against Bryson as the court entered against Wing Shack, i.e., $8,428.75. [Entry #30-2 at 7].

Wing Shack has the capacity for approximately 50 people. [Entry #23-4 at 3]. The investigator counted the number of patrons three times and found there were 12 patrons during each count. *Id.* G&G provided evidence that the licensing fee for Wing Shack to have legally shown the Program would have been $1,200. [Entry #23-3 at 9].

The court may award statutory damages between $1,000 to $10,000, in an amount "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. *See Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd.*, 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect"); *G&G Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc.*, 2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods

of calculating statutory damages). The Fourth Circuit has not addressed any of these methods.

Because it would have cost $1,200 for Bryson to purchase the right to exhibit the Program at Wing Shack, the undersigned recommends a statutory damages award of $1,200. The undersigned finds that an award of $1,200 fairly approximates the actual harm to G&G resulting from Bryson's unauthorized exhibition of the Program. *See Joe Hand Promotions, Inc. v. King*, C/A No. 4:12-245-RBH, 2012 WL 5238285, at *3 (D.S.C. Oct. 23, 2012).

2. Enhancement of Statutory Damages under 47 U.S.C. § 605.

G&G claims that Bryson willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $4,800. [Entry #30-2 at 7]. The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition to G&G's pleadings regarding Bryson's intentional acts, it presented evidence, through its Admissions above, that Bryson willfully and intentionally intercepted the Program using a residential satellite television service.

The undersigned is in agreement with other courts that have considered this issue "that a firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately." *J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Bar & Grille*, C/A No. 2:09-3141-DCN-RSC, 2010 WL

1838432, *2 (D.S.C. April 5, 2010). Consequently, the undersigned finds that an enhanced award is necessary to deter the willful piracy of G&G's programs. In this case, Bryson unlawfully exhibited the Program on four televisions at Wing Shack to at least 12 customers. It is not hard to believe that this type of piracy could provide Bryson and Wing Shack with an unfair competitive advantage and harm G&G by making it less likely that Bryson and Wing Shack's competitors will purchase its programs. The court finds that enhanced damages in the amount of four times the basic statutory damages, or $4,800.00, provides just and adequate deterrence for such willful violations. Accordingly, the court recommends awarding total damages in the amount of $6,000.00.

III.    Attorneys' Fees and Costs under 47 U.S.C. § 605

The Communications Act requires that the court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As rightful owner of the Program broadcast rights, G&G is an aggrieved party that has prevailed. G&G requests that it be awarded $2,428.75 in costs and attorneys' fees, as outlined in its submitted declarations from its South Carolina counsel, Leonard R. Jordan, Jr. ("Jordan"); and its California counsel, Thomas P. Riley ("Riley"). [Entry #23-6; Entry #23-7]. The undersigned incorporates by reference the analysis contained in the prior Report and Recommendation dated April 4, 2013 [Entry #24] concerning the appropriate costs and fees to be awarded to G&G. Therefore, the undersigned recommends that judgment against Bryson include an award of costs and attorneys' fees in the amount of $2,428.75 ($450 costs plus $1,978.75 attorneys' fees).

IV.     Conclusion and Recommendation

The undersigned recommends summary judgment be entered against Bryson and that she be found liable for willful violation of 47 U.S.C. § 605. As a result of such violation, G&G should be awarded judgment against Bryson, which should include the award of $450 in costs and $1,978.75 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and $6,000 in statutory and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C). Thus, the total recommended monetary award is $8,428.75 ($6,000 damages, plus $2,428.75 in costs and fees), barring supplementation by counsel. It is recommended that this judgment be made joint and several with the earlier judgment against Wing Shack.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 7, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).